United States Bankruptcy Court, Northern District of Illinois

| NAME OF ASSIGNED JUDGE | Thomas M. Lynch | CASE NO. | 17 – 81156 |
|---|---|---|---|
| DATE | February 8, 2018 | ADV. NO. | |
| CASE TITLE | In re: Willie J. Donald, Debtor. | | |
| TITLE OF ORDER | AMENDED ORDER DENYING CONFIRMATION OF AMENDED PLAN[1] | | |

**DOCKET ENTRY TEXT**

This matter comes before the court for confirmation of the Modified Chapter 13 Plan, Dated 10/12/17 (the "Plan") proposed by the Debtor, Willie J. Donald (ECF No. 23) and the Objection to Confirmation filed by the standing Trustee. (ECF No. 29.) For the reasons discussed below, the objections of the Chapter 13 Trustee are sustained in part and denied in part and the court DENIES CONFIRMATION. The Debtor is granted to March 12, 2018 to file a third amended plan and amended schedules in conformity with the court's findings and ruling today. If a plan is not filed within that time the case will be DISMISSED without further notice. If an amended plan and schedules are filed, the continued confirmation hearing will be held on March 29, 2018 at 10:00 a.m. or as soon thereafter as the matter may be heard.

+

## STATEMENT

Mr. Donald filed his voluntary petition for relief under Chapter 13 on May 15, 2017. His original schedules stated that he was "[n]ot employed" at that time but was receiving government assistance and living with his "non-filing spouse" who was employed. On October 12, 2017, Mr. Donald filed a modified Chapter 13 plan (as amended, the "Plan") and amended schedules which revealed that his circumstances had significantly changed. Among other things, the October

---

[1] Amending order docketed at ECF No. 42 to reflect the correct date of decision.

filings no longer listed income from a non-filing spouse and indicated that he was self-employed, working as a barber. The Debtor's Plan proposes to pay the Trustee a total of $4,860, in $135 monthly installments over 36 months. The Plan proposes to pay at least 10% of estimated General Unsecured Claims. Although the Plan estimated allowed General Unsecured Claims to total $31,578 – thereby requiring an estimated $2,783.81 in additional payments – the claims filed before the November 13, 2017 bar date total only $6,277.24.[2] It makes no provision for any domestic support liability or any allowed priority claims other than those of the Debtor's attorney. The Plan does not provide for any secured claims or arrearages.

Four days later the Chapter 13 Trustee filed her written objection to Plan which opposes confirmation of the Plan as infeasible, claiming that the Debtor has an "Impossible budget" with "no rent or utilities." The Trustee also objects that the Debtor has failed to cooperate by not providing proof of his income as a barber and objects to a provision of the Plan permitting the Debtor to pay off the Plan early.[3] The Trustee's written objection also seeks the dismissal of this case.[4] At the confirmation hearing held on December 15, 2017, the parties by their respective attorneys requested an evidentiary hearing be held on the Plan and objection. On January 18, 2018, the hearing was held at which the Debtor was examined under oath and five exhibits were received in evidence, all without objection. At this hearing, the Chapter 13 Trustee clarified that she principally bases her objection and request for dismissal on the Debtor's arrearage in required payments to the trustee, and based on alleged failure to meet the requirements of several subsections of Section 1325(a), namely (a)(1), (2), (3), (6), (7), (8) and (9).

After consideration of the exhibits and testimony presented at trial and taking judicial notice of its docket, the court makes the following findings of fact as required by Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

---

[2] Based on the Plan's provision for Trustee's fees of 10% and an estimated $4,000 in priority attorney's fees, the Plan will require an additional $281.92 in payments to pay those general unsecured claims at least 10%. Paragraph D.2 provides that to the extent the payments during the initial term are insufficient to pay allowed general unsecured claims the minimum percentage, the Debtor shall make additional monthly payments, up to the maximum term of 60 months, to the extent necessary to pay such amount.

[3] The Trustee also objected that if a proof of claim were "filed for child support arrearage, plan will not complete in 60 months." But as noted above, the claims bar date has already elapsed and no such proof of claim was filed.

[4] In an earlier objection to the Debtor's original Plan, the Trustee had also objected that the Debtor had not provided proof of income from his "wife," and raised several objections relating to domestic support obligations. In particular, the Trustee claimed that according to a "notice from State of IL, debtor has current child support obligation of $50/month with outstanding arrearage of $23,300.83. This expense is not listed on schedule J and amount listed on schedule E/F is incorrectly listed as $7,159.00." The Trustee had further objected that the Debtor had not certified that he had paid all post-petition amounts required to be paid under a domestic support obligation, if any, and asserted that the proposed plan "will not complete within 60 months (11 USC 1315(a)4) [sic] if child support arrearage is $23,300.83. The court notes that Title 11 contains no Section 1315. Presumably the Trustee meant to reference Section 1322(a)(4), requiring commitment of the debtor's disposable income for five years if the plan provides for less than full payment of a claim entitled to priority under Section 507(a)(1)(B).

## Findings of Fact

In the original schedules filed with his petition, the Debtor stated that he was married and living in an apartment in Crystal Lake, Illinois. He disclosed that he was not employed and was receiving $194 in monthly government assistance benefits. According to his schedules, his "non-filing spouse" was employed and contributed $2,062 of their household's estimated monthly income of $2,122. According to his Statement of Financial Affairs, the Debtor had received "$0 . . . wages, commissions, bonuses [or] tips" in calendar years 2015 and 2016, and had not received any other income during those years. He also disclosed that three dependents, ages 4, 9 and 16, lived with him.

The Debtor originally estimated his average monthly expenses to be $1,997. Notably, he did not list any deduction from his monthly income for domestic support or list a monthly expense for maintenance or support expenses. The Debtor originally listed total liabilities of $15,159, which included $9,159 in priority unsecured claims. This amount includes $7,159 in outstanding Domestic Support Obligations and $2,000 in taxes and other debts owed government entities. His listed unsecured, non-priority debt includes a $6,000 claim due the City of Chicago for parking tickets. He did not disclose holding any legal or equitable interest in real property or vehicles, claiming to own only some household goods, personal electronics and clothing for which he claimed Illinois statutory exemptions. Nor did he list any liability for secured indebtedness.

The Debtor's amended schedules filed on October 12, 2018 list a $23,300.83 Domestic Support Obligation due to the State of Illinois, which is described as "Family Support . . . Opened 05/01 Last Active 7/3/04." Janeen Carter, living at the Crystal Lake apartment disclosed in his petition as the Debtor's residence, is listed as the holder of a Domestic Support Obligation claim for "$0.00." In addition to unsecured priority claims totaling $26,280.07, his amended filings list an additional $5,298 in non-priority claims. The amended schedules also disclose that the Debtor is now self-employed as a barber, with no place of work or duration of employment given. His amended Schedule I estimates the Debtor's monthly income to include $650 per month from barbering in addition to the previously disclosed government assistance. His schedules do not attribute any expenses to his business nor disclose any spousal income contributed to his household expenses. However, his amended schedules also indicate considerably lower household expenses, totaling $689, largely consisting of monthly purchases of food and payments for telephone, transportation and vehicle insurance. While he indicates that his dependent children no longer live with him, he did not file a change of address statement.

At trial, the Debtor admitted that he is not married and that he had not been married. He identified Janeen Carter to be the person whom he referred as his "wife" in his initial bankruptcy filings and with whom he then lived. By the time of his amended filings he and Ms. Carter were

estranged. He had moved in and was living with his mother, and Ms. Carter was not contributing to his expenses and obligations. By then, he was self-employed and doing business as "Sean Barber." In December 2017, he and Ms. Carter reconciled and he rejoined her household, but since then he has not made any contributions to that household. He continues to operate the barber business. Mr. Donald stated under oath that at least one of their dependent minors, the eldest, is his child and that in 1999 "the aid office put child support on me because I had a child with Janeen.... I was supposed to pay $50 per month to Illinois... I'm not sure. I haven't started paying." He repeatedly stated during his testimony that he will be able to make the Plan payments and complete the Plan if it is confirmed.

## Discussion

Section 1325 of the Bankruptcy Code sets out the requirements for confirmation of a Chapter 13 plan. Under this section, and subject to various exceptions not applicable here, a bankruptcy court must confirm a proposed plan if the nine requirements of Section 1325(a) are satisfied. 11 U.S.C. § 1325(a). The standing Trustee objects to confirmation, and while initially suggesting at trial that several of those requirements have not been satisfied, it appears that the gist of her argument lies with five of these provisions. The initial burden of proof to challenge the debtor's good faith in proposing the plan lies with the trustee, but the ultimate burden then shifts to the debtor to show the requisite compliance with all the requirements of the section. *See generally, In re McNichols*, 249 B.R. 160, 167 (Bankr. N.D. Ill. 2000) (discussing burden to show compliance with Section 1325 (b)(1)); *In re Love*, 957 F.2d 1350, 1356 (7th Cir. 1992) (considering Section 1325(a)(3), (7)). Although the caselaw remains unsettled, it appears that the "preponderance of the evidence" standard is the appropriate one, unless an important individual interest hangs in the balance. *See In re Bloomingdale Partners*, 155 B.R. 961, 983 (Bankr. N.D. Ill. 1993).

As a threshold matter the Trustee alleges that the Debtor is not current in his payments due the Trustee or by the Plan before confirmation. 11 U.S.C § 1325(a)(2). However, at trial the Debtor presented three cashier's checks each in the amount of $135 made in blank. At the following status hearing, the Trustee's attorney confirmed that the Debtor had in fact delivered this payment, it had posted and the Debtor is currently due a credit. Accordingly, there is no dispute that the Debtor has satisfied the payment requirement subsumed under Section 1325(a)(2).

Next, the Trustee asserts that the plan is not feasible pursuant to subsection (a)(6). As a condition to confirmation the Debtor must "be able to make all payments under the plan and comply with the plan." 11 U.S.C. § 1325(a)(6). To be feasible, the plan must have a reasonable likelihood of success as determined by the particular circumstances of the plan and the case. The debtor bears the ultimate burden of proof as to this requirement. *In re Jongsma*, 402 B.R. 858, 871 (Bankr. N.D. Ind. 2009). Courts applying this standard "must be satisfied that the Debtor has the

present as well as the future financial capacity to comply with the terms of the plan." *In re Lewis*, 459 B.R. 281, 290 (Bankr. N.D. Ill. 2011) (quoting *First Nat'l Bank of Boston v. Fantasia (In re Fantansia)*, 211 B.R. 420, 423 (1st Cir. B.A.P. 1997)). While the feasibility requirement is not rigorous…the plan proponent must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan." *In re Olson*, 553 B.R. 343, 348 (Bankr. N.D. Ill. 2016) (quoting *In re Bernardes*, 267 B.R. 690, 695 (Bankr. D.N.J. 2001)).

The Trustee is understandably skeptical that the $135 monthly payment provided for in the Plan now under review is a "bridge too far" under the circumstances presented. Initially, the then-unemployed Debtor, filed this case to propose a plan funded from a combination of his Illinois public assistance benefits and the contributions of his "wife," the non-party mother of his children with whom he was living. After the creditors meeting, his circumstances took another turn with the rupture of his relationship, resulting in his leaving Ms. Carter's household and moving in with his mother.

However, the Debtor credibly testified that he then started cutting the hair of adults and children for $7 and $15, respectively, plus the occasional gratuity, as "Sean Barber" beginning around October, 2017. He credibly testified that he had done this in the past, "some twenty years ago," and owns clippers. The Trustee did not challenge his testimony that he is in fact so engaged, distributes business cards and enjoys a regular clientele. Nor disputed is his testimony that he now "gives" approximately 8 – 10 haircuts per week. However, while we can accept his testimony that he pays no rent, operates without a license and keeps all his earnings, his testimony that he incurs no expenses operating this business aside from the cost of his cell phone and cleaning agents is contradicted by, among other things, testimony about having to travel as much as "two to three" miles for haircut appointments. Some expenses, yet to be disclosed, must be incurred for the business he describes.

Most significantly, his cashbook estimates do not add up. While the Debtor testified that he has made as much as $250 in a good week, he acknowledged that every week is not always so good and that he believes that he has earned $250 or more only twice in the weeks he has been working as a barber. He admitted on the stand that he has made as little as $100 in a week and further testified that his business averages ten or fewer haircuts a week, with as much as 40% of his customers being children charged only $7 a haircut. The Debtor's own testimony — taken at face value as he offers no corroborating proof whatsoever (for example, no receipts or the statements of regular customers or even one of his business cards) — strongly suggests that projected monthly income of even $500 is likely a huge stretch, let alone the $650 per month estimated on his amended Schedule I, and the basis for his argument for the Plan's feasibility.

Further, the Debtor admits that his schedule of household expenses as now amended is not correct. The good news is that he has reconciled with Ms. Carter and is currently domiciled with

his family. Further, he asks the court to consider that his spouse's employment is undisturbed and income unchanged[5] and that that his oldest son, the dependent for whom Mr. Donald acknowledged that he owed some support obligation in the past, now works part time and "takes care of himself. Additionally, the Debtor offered the affidavit of Ms. Carter that states her intent not "to pursue" child support from the Debtor. Nevertheless, his amended Schedule J, no less than the amended Schedule I, fail to accurately reflect his actual expenses and income. Additional difficulty arises from his admission at trial that he may be required to pay the State of Illinois for child support obligations. Thus, we find that the Debtor has not shown by the preponderance of the evidence that his plan satisfies Section (a)(6)'s feasibility requirement given his failure to establish regular income at the level he himself claims to be necessary for completion of the plan, as well as due to the lack of documentation for his income and for his actual expenses. See *In re Wilkinson*, 99 B.R. 366, 269 (Bankr. N.D. Ohio 1989).[6]

The Trustee also challenges the Plan on the basis of its lack of treatment of alleged child support obligations. Child support obligations are relevant to plan confirmation in several ways. First, allowed claims for pre-petition domestic support obligations are entitled to priority under Section 507(a)(1)(A) or, if assigned or owed directly to or recoverable by a governmental unit, Section 507(a)(1)(B). Section 1322(a)(2) generally requires a plan to provide for payment in full of all allowed claims entitled to priority under Section 507 unless the holder of the claim agrees to different treatment. Section 1322(a)(4) permits payment of an allowed claim entitled to priority under Section 507(a)(1)(B), but only if the plan provides for the debtor to contribute his or her disposable income to the plan for 5 years. The Trustee notes that the Debtor listed in his schedules a $23,300.83 prepetition claim of the Illinois Department of Healthcare for "Family Support" which is not provided for in the Plan. At least in her objection to the original plan, the Trustee argues that the Plan is not confirmable because it does not and cannot provide for payment of this arrearage in full and yet has a term shorter than 60 months. However, it is undisputed that the Department failed to file a timely proof of claim by the claims bar date and therefore does not have an allowed claim. While there is a possibility that any such alleged claim is nondischargeable – see 11 U.S.C. §§ 523(a)(5), 1328(a)(2) – the Trustee has not shown that such alleged but not allowed claim for pre-petition support obligations is relevant to plan confirmation.

However, any unpaid post-petition domestic support obligations would be relevant to confirmation. While technically the Bankruptcy Code does not provide for the filing of a proof of claim for post-petition domestic support obligations, *see, e.g., In re McKinney*, 507 B.R. 534, 541 (Bankr. W.D. Pa. 2014), Section 1325(a)(8) requires for confirmation that a debtor be current on post-petition support obligations. That provision requires the debtor to have "paid all amounts

---

[5] We note in passing that Ms. Carter did not appear to testify or even offer a sworn statement that she agrees to permit a portion of her household income to be applied to his expenses, let alone his plan payments.
[6] His reliance on admittedly stale and inaccurate schedules, including Schedules I and J, at the time of the confirmation hearing also supports our denial of confirmation of the proposed plan.

that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute to pay such domestic support obligation." 11 U.S.C. § 1325(a)(8). As noted above, during cross-examination the Debtor vaguely referred to child support due the state for at least one of the children living in his household together with "owing [the state] $9,000." Mr. Donald stated that in 1999 the "aid office put child support on me because I had a child with Janeen. There is something that I was supposed to pay…$50 a month to Illinois. I'm not sure." He did not state whether that obligation arose from a statute or from a court or administrative order, and did not know whether he owed support for the two younger children claimed as dependents on his schedules. No further evidence was offered on this point by the Debtor or the Trustee. The Trustee makes a colorable showing that such a post-petition obligation exists, based on the Debtor's own filed schedules and testimony. The burden thus shifted to the Debtor to demonstrate that he in fact has no such obligation falling within the terms of the subsection for his acknowledged child or other, having paid any and all amounts due post-petition. His failure to demonstrate that he has done so compels this court to deny confirmation of the Plan. See *In re Ashley,* 2013 Bankr. LEXIS 2548 *8 (Bankr. W.D. Ky. June 25, 2013).

Next, the Trustee argues that the Debtor has failed to comply with the requirement that he file "all applicable Federal, State, and local tax returns as required by section 1308." 11 USC § 1325(a)(9). Debtor responds by stating that because he had been unemployed he was not obliged to file tax returns. This argument, too, was not examined while the Debtor was on the stand and no proof was presented regarding this objection, save for his admission. Nevertheless, the record is undisputed that the Debtor is an individual under age 65 whose disclosed annual income has been well under the reportable threshold of $10,400. As such the Debtor does not appear to be required to file a tax return for the year ending on the petition date as of the date of his meeting of creditors. *See* Internal Revenue Service, Instructions to Individual 2017 Form 1040, Tables A and C. Further, the Debtor's testimony and schedules asserting that he has been unemployed for the past several years and last worked as a barber about 20 years ago sufficiently demonstrate that he was not obliged to file returns during the preceding years pursuant to Section 1308. Accordingly, we find that the Debtor has satisfied the requirements of Section 1325(a)(9).[7]

Finally, and largely regarding the above-discussed objections, the Trustee also objects to confirmation under subsections (a)(1) and (3).[8] Section (a)(1) requires that the "plan complies with the provisions of" Chapter 13 and Title 11, and therefore overlaps with the other objections

---

[7] This is not to say that the Debtor might not be required to file a tax return for 2017 even if no taxes are due if his self-employment income amounts to $400 or more. *See* IRS Instructions and Tables, *supra.*

[8] The Trustee also suggested at one point during oral argument that she objected under subpart 1325(a)(7) requiring that the petition was filed in good faith. She admitted that this objection simply overlapped with her other objections relating to the alleged domestic support obligations. In any event, she has not made a preliminary showing on her oral objection that the confirmation may also be denied under subpart (a)(7) for alleged bad faith in filing the petition, and we accordingly conclude that that argument, too, has been abandoned.

discussed above. Section 1325(a)(3) requires that the "plan has been proposed in good faith and not by any means forbidden by law." The Trustee did not point to any specific reason for her belief that the plan was proposed in bad faith, acknowledging that she was not aware of any bad faith towards a specific creditor other than possibly the failure to provide for the domestic support claim discussed above. As to the latter objection, "while assessing good faith for purposes of plan confirmation depends on the 'totality of the circumstances,' the primary question is whether the debtor is 'really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?'" *In re Olson,* 553 B.R. 343, 348 (Bankr. N.D. Ill. 2016) (quoting *In re Schaitz,* 913 F.2d 452, 253-54 (7th Cir. 1990)). Indeed, "[a] chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." *In re Smith,* 286 F.3d 461, 467 (7th Cir. 2002) (internal citation omitted). From considering the weight of the evidence, including careful examination of the substance and credibility of the Debtor's testimony, the court does not find that the Debtor's Plan, while replete with difficulties as discussed above, is based on knowing misrepresentations, was an effort to thwart creditors or other abuse of the bankruptcy process.

As the Trustee relies on the same circumstances in support of its Section (a)(1) argument, we, too, reach the same conclusion regarding that issue, but only to the extent that the Trustee raises any grounds beyond the deficiencies discussed above.

## Conclusion

For the foregoing reasons, the court sustains in part the objections of the Trustee, finding that the Debtor has failed to demonstrate that his proposed plan satisfies the requirements of 11 U.S.C. § 1325(a)(6) and (8), and additionally §1325(a)(1) and (3) solely as they relate to the plan's feasibility and the lack of proof of payment of post-petition domestic support obligations. Accordingly, the court DENIES CONFIRMATION of the Plan. Further, the Trustee's request for the dismissal of this case under Section 1307 is DENIED WITHOUT PREJUDICE. The Debtor is granted 32 days to file a third amended plan and amended schedules in conformity with the court's findings and ruling today. If a plan is not filed on or before March 12, 2018, the case will be dismissed. If an amended plan and schedules are filed, the continued confirmation hearing will be held on March 29, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3100 at the United States Courthouse, Rockford, Illinois.

ENTER:

_____
Thomas M. Lynch
United States Bankruptcy Judge